UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BACOU-DALLOZ USA SAFETY, INC., and HOWARD LEIGHT INDUSTRIES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>CABOT SAFETY INTERMEDIATE CORPORATION and AEARO COMPANY<br><br>Defendants. | Case No. 04-40049-NMG |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS OR TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404**

Defendants Cabot Safety Intermediate Corporation and Aearo Company (defendants are collectively referred to herein as "Cabot") submit this memorandum of law in support of their motion to dismiss or transfer venue pursuant to 28 U.S.C. §1404(a).

Cabot seeks to dismiss this action or, in the alternative, transfer this action to the Southern District of Indiana, where there is a first-filed parallel action pending between the same parties involving the same issues. Moreover, transfer is appropriate because none of the witnesses and documents relevant to this action are located in Massachusetts. Rather, the relevant witnesses and documents are located in Indianapolis, Indiana. Further, the plaintiffs, Bacou-Dalloz USA Safety, Inc. and Howard Leight Industries, LLC (plaintiffs are collectively referred to herein as "Leight"), have absolutely no connection to Massachusetts. Leight has no facilities, employees, or documents located in Massachusetts. Thus, Leight's Complaint for Declaratory Judgment is a blatant effort to forum shop and Cabot's motion to dismiss or transfer should therefore be granted.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. <u>Cabot's First-Filed Parallel Action in the Southern District of Indiana</u>

Cabot's manufacturing, marketing and sales operations are headquartered in Indianapolis, Indiana. Cabot and the plaintiffs, Bacou-Dalloz USA Safety, Inc. and Howard Leight Industries, LLC (plaintiffs are collectively referred to herein as "Leight") are direct competitors in the personal safety products industry, including the manufacture and sale of earplugs. On March 23, 2004, Cabot filed suit against Bacou-Dalloz USA Safety, Inc. Howard Leight Industries Division in the United States District Court for the Southern District of Indiana for federal and state trademark infringement, trademark dilution, and false designation of origin based on Leight's manufacture of yellow colored earplugs in the United States for sale in the U.S. and overseas (Civil Action No. 03-cv-00547-RLY-WTL). Cabot's Complaint in the Southern District of Indiana (hereinafter the "Indiana Complaint") is attached to the Declaration of Andrew C. Ryan ("Ryan Decl."), filed herewith, as Exh. 1.[1] Cabot has long been known for its distinctive yellow earplugs. Cabot first used its yellow colored earplugs in commerce in 1973 and has had a Trademark Registration for the color yellow on earplugs since 1987. (See '400 Registration). Further, Cabot's trademark has been incontestable since 1992.

Two weeks after Cabot filed the Indiana Complaint, Leight filed its complaint for declaratory judgment relief in Massachusetts on April 6, 2004 ("Leight Complaint). *See* Ryan Decl., Exh. 2. Leight's Complaint is an attempt to forum shop claims that are compulsory counterclaims to Cabot's Indiana Complaint. Specifically, Leight seeks a declaratory judgment

---

[1] Defendant Cabot Safety Intermediate Corporation is the owner by assignment of the asserted U.S. Trademark Registration No. 1,435,400 for yellow colored earplugs, filed on April 14, 1986, a copy of which is attached to the Indiana Complaint. Defendant Aearo Company is the exclusive licensee of the '400 Registration.

2

that Cabot's trademark for yellow colored earplugs is invalid due to functionality (Leight's First Claim For Relief), that the yellow earplug mark has been abandoned (Leight's Second Claim For Relief), that the court lacks subject matter jurisdiction for sales of earplugs made abroad (Leight's Third Claim For Relief), and that Cabot is precluded by the principals of *res judica* to the extent it asserts the yellow earplug trademark against any <u>partially</u> yellow colored earplugs (Leight's Fourth Claim For Relief).[2]

### B. The Currently Pending Series of Litigation Between the Parties in Indiana

This action is the latest in a series of recent, ongoing civil actions between Cabot and Leight. All of the other actions are currently pending in the Southern District of Indiana and relate to intellectual property issues, including trademark and patent rights. The first action, filed by Leight, was originally filed in the Central District of California and was subsequently transferred to the Southern District of Indiana on February 14, 2003 as Civil Action No. 03-cv-00235-DFH-VSS. The order transferring the first action to Indiana and Leight's amended complaint are attached to the Ryan Decl. as Exhs. 3 and 4, respectively.

The second action, filed by Cabot, was filed in the Southern District of Indiana on September 25, 2003 as Civil Action No. 03-cv-01406-DFH-VSS. The complaint in the second action is attached to the Ryan Decl. as Exh. 5.[3] The third action is Civil Action No. 03-cv-00547-RLY-WTL, involving the '400 Registration and filed two weeks prior to Leight's present Complaint for declaratory judgment relief as discussed above.

---

[2] Leight's Fourth Claim For Relief is completely moot and does not rise to the level of a case or controversy because Cabot has not and will not assert the yellow earplug trademark against Leight's <u>partially</u> yellow colored earplugs, known as the LaserLite and MaxLite earplugs. The Fourth Claim For Relief is apparently Leight's effort to create some connection with this forum based on litigation that occurred between the parties several years ago involving the '400 Registration and those earplugs (*i.e.*, Civil Action No.: 97-40216-NMG).

[3] Leight has filed a motion to transfer the second action to the Southern District of California. The motion is currently pending.

3

On April 1, 2004, Magistrate Judge V. Sue Shields of the Southern District of Indiana held a settlement conference between Cabot and Leight involving all three of the civil actions mentioned above. The conference has been continued for the parties to consider their settlement positions. *See* Ryan Decl., Exh. 6.

### C. Cabot's Evidence and Witnesses are Located in Indianapolis

The defendants, Cabot Safety Intermediate Corporation and Aearo Company, are both corporations organized and existing under the laws of the State of Delaware. Aearo Company has its headquarters and principal place of business at 5457 West 79th Street, Indianapolis, Indiana 46268. Cabot Safety Intermediate Corporation is headquartered in Delaware. *See* Declaration of Brian Myers, ¶ 2 ("Myers Decl."), filed herewith.

Cabot's marketing and sales departments are located in Indianapolis. *Id.*, at ¶ 4. Accordingly, all sales and marketing decisions are made from the Indianapolis headquarters and the employees having the most knowledge regarding the '400 Registration, including the advertising, marketing and sales of Cabot yellow colored earplugs, are located in Indianapolis. *Id.* Further, the documents pertaining to the use of the '400 Registration, including documents relating to the advertising and marketing of Cabot's yellow colored earplugs, are located in Indianapolis. *Id.* In addition, the documents relating to sales of Cabot's yellow colored earplugs are located in Indianapolis. *Id.*

Although Aearo Company does have a manufacturing facility located in Southbridge, Massachusetts, it is primarily for the manufacture of safety eyewear. *Id.*, at ¶ 6. Only one brand of Cabot's yellow colored earplugs, known as the UltraFit, is manufactured in the Southbridge facility. *Id.* After manufacture, the UltraFit is shipped to Indianapolis for packaging. *Id.* All other brands of Cabot's yellow colored earplugs are manufactured and packaged in Indianapolis,

such as the E-A-R Classic, the E-A-R Classic SuperFit, the Taperfit, the E-Z Fit, the E-A-Rsoft Yellow Neons, and the E-A-RSoft FX. *Id.,* at ¶ 7. Moreover, all of Cabot's earplug products, including the UltraFit, are distributed from Indianapolis. *Id.* None of the marketing, advertising and/or sales personnel responsible for Cabot's yellow colored earplugs are located in Southbridge. *Id.,* at ¶ 8. Moreover, no documents relating to the marketing, advertising and/or sales of Cabot's yellow colored earplugs are located in Southbridge. *Id.*

D. <u>Leight Has Absolutely No Connection to Massachusetts</u>

As discussed in Leight's Complaint, ¶ 1, the plaintiff is a large corporate entity whose secondary headquarters are located in Rhode Island. However, the headquarters for Howard Leight Industries, the hearing protection division of Leight, and the manufacturer of accused yellow colored earplugs, is in San Diego, California. *See* Leight's Complaint, ¶ 1. Moreover, in its motion to transfer the above-mentioned Civil Action No. 03-cv-01406-DFH-VSS from Indiana to California (*see* Ryan Decl., Exh. 7, p.2), Leight states:

> Defendant Bacou [aka Leight] – the party whose conduct and product are at issue – conducts its operations for earplug products out of its San Diego, California headquarters and the main manufacturing facility for its Howard Leight Division ("HLI"). See Exh. 2 at ¶ 3 (Woo Declaration). Bacou's earplug operations in San Diego include manufacturing, research and development, marketing, distribution and customer service, as well as accounting functions. *See id.*

Thus, Leight contends that its employees having knowledge of the accused yellow colored earplugs are located in California, not Rhode Island. Moreover, documents relating to the sale, manufacturing, marketing and advertising of the accused yellow colored earplugs are also located in California. There is no indication that Leight has any facilities, employees, or documents located in Massachusetts.

## II. ARGUMENT

A. <u>Legal Standards</u>

Cabot files this motion under Rule 12(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §1404(a). Rule 12(b) provides that, at the option of the pleader, defense of "improper venue" may be made by motion prior to a responsive pleading. Section 1404(a) provides that "... in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought."

Under §1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000). "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). A determination of venue under § 1404(a) lies in the sound discretion of the district court. *See Cianbro Corp. v. Curran-Lavoie*, 814 F.2d 7, 11 (1st Cir.1987).

B. <u>Under the First Filed Rule, This Action Should be Transferred to the Southern District of Indiana</u>

Cabot commenced its action for infringement of the '400 Registration in the Southern District of Indiana two weeks before this action was filed in Massachusetts. In this case, a failure to transfer this action will result in nearly complete overlapping litigation proceeding in both the Southern District of Indiana and the District of Massachusetts. The First Circuit has observed that "[w]here the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." *See*

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir.1996). Further, "[w]here identical actions are proceeding concurrently in two federal courts, threatening duplicative litigation and a waste of judicial resources, the first-filed action is generally preferred in a choice-of-venue decision." *Cody v. Ashcroft & Gerel*, 996 F. Supp. 95, 101, n. 8, *citing Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). "Actions are identical where they involve the same parties and the same issues or the same transaction." *Id., citing Norman v. Brown, Todd & Heyburn, et al.*, 693 F. Supp. 1259, 1261 (D. Mass. 1988).

As mentioned above, Leight's Complaint for a declaratory judgment consists merely of compulsory counterclaims to Cabot's Complaint for infringement of the '400 Registration. Leight's first two claims for relief attack the validity if the '400 Registration on the grounds of functionality and abandonment. Leight's claims are certainly duplicative of and overlap the Indiana civil action because the validity of Cabot's trademark must be shown in order to prevail on infringement. *See Russell Harrington Cutlery, Inc. v. Zivi Hercules, Inc.*, 1992 WL 470477, *2 (D. Mass. 1992) *citing Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220-23 (1st Cir.1989) ("To prove trademark infringement pursuant to § 1125(a), [plaintiff] must demonstrate both 1) that its mark is entitled to protection and 2) that there is a likelihood of confusion among prospective purchasers."). Leight's third claim for relief seeks a declaration that Cabot is not entitled to the relief it seeks in the Indiana litigation. Thus, the issues raised in Leight's Complaint are duplicative of those in the Indiana civil action.

Most jurisdictions have held that, in the interest of wise judicial administration, a court may dismiss or transfer a federal action when it is duplicative of a parallel action which is already pending in another federal district court. *See Central States, Southeast and Southwest Areas Pension Fund, et al v. Paramount Liquor Co.*, 34 F. Supp. 2d 1092, 1095 (N.D. Ill. 1999);

*see also Asset Allocation and Management Company v. Western Employers Insurance Company*, 892 F.2d 566, 572 (7th Cir. 1990) ("[T]here is overwhelming case authority that the first court has power independently of the equitable doctrine that bars vexatious litigation, to enjoin the defendant from bringing a separate suit against the Plaintiff in another court, thereby forcing the defendant either to litigate his claim as a counterclaim or to abandon it."). This is known as the first-filed rule.

The first-filed rule gives priority to the first action in which jurisdiction is established. *See Northwest Airlines Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993) ("[T]he first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instated in separated courts to the party who first established this jurisdiction."). The plaintiff in the *second filed suit* bears the burden of demonstrating special circumstances which justify a diversion from the first-filed rule. *Id.*, at 1095. The presumption is that "subject to the principals that govern requests to transfer to a more convenient forum, the first case should be allowed to proceed and a second should be abated ...." *Asset Allocation and Management Company v. Western Employers Insurance Co.*, 892 F.2d at 573.

Under the first-filed rule, the action initiated by Cabot on March 23, 2004 was the first-filed action and, therefore, has priority over this later filed action. If both cases are allowed to proceed, the parties will litigate the same issues in two Federal Courts. The litigation would be duplicative and result in a waste of judicial time and resources. Cabot would be required to litigate the issues of trademark validity and infringement, trademark dilution, false designation of origin, and Leight's defenses in two courts simultaneously, with two sets of schedules, discovery proceedings on two separate tracks, and potentially, two full trials that at which there will significant overlap of testimonial and other evidence.

There is no reason in this action to diverge from the first-filed rule. Moreover, Leight is not permitted to bring an action for declaratory judgment merely to preempt Cabot's choice of forum for its coercive action. *See EMC Corp. v. Roland*, 916 F. Supp. 51, 54 (D. Mass. 1996) ("Indeed, 'the misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.'") (citation omitted).

Accordingly, Cabot's motion should be granted and this action should be dismissed or, in the alternative, transferred to the Southern District of Indiana.

C. Venue for this Action is More Appropriate in the Southern District of Indiana

In addition to the first-filed rule, this action should be transferred to the Southern District of Indiana under the other requirements of §1404(a). "In making the determination whether to transfer an action, a district court should consider the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation." *Norman v. Brown, Todd & Heyburn et al.*, 693 F. Supp. 1259, 1261 (D. Mass. 1988) *citing Cianbro Corp. v. Curran- Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987); *Codex v. Milgo Electric Corporation*, 553 F.2d 735, 737 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977).

**1.   Indiana is more convenient for the witnesses than Massachusetts**

As discussed above, all of Cabot's yellow colored earplugs, which are covered by the '400 Registration, are packaged in Indianapolis and distributed from Indianapolis. Myers Decl. ¶¶ 6-7. In addition, all but one brand of Cabot's yellow colored earplugs are manufactured in Indianapolis, including the E-A-R Classic, the E-A-R Classic SuperFit, the Taperfit, the E-Z Fit, the E-A-Rsoft Yellow Neons, and the E-A-RSoft FX. *Id.* Moreover, Cabot's marketing and

9

sales departments are located in Indianapolis. *Id.*, at ¶ 4. Accordingly, all sales and marketing decisions are made from the Indianapolis headquarters and the employees having the most knowledge regarding the '400 Registration, including the advertising, marketing and sales of Cabot yellow colored earplugs, are located in Indianapolis. *Id.* No employees responsible for the advertising, marketing and sales of Cabot's yellow earplugs are located at the Southbridge, Massachusetts facility. *Id.*, at ¶ 7.

In addition, as discussed above, there is absolutely no indication that Leight has any connection whatsoever to Massachusetts. Leight has no facilities, employees, or documents located in Massachusetts. Rather, Leight has a corporate headquarters in Rhode Island and a manufacturing facility in San Diego, California.

Thus, given that all of Cabot's employees with knowledge relating to this action are located in Indianapolis, and given that Leight contends that its employees having relevant knowledge are located in California, and given that Leight has no facilities or employees of any kind located in Massachusetts, it is clear that Indiana is by far a more convenient forum for the witnesses than Massachusetts.

### 2. The Southern District of Indiana had jurisdiction first

As discussed in detail above, the Southern District of Indiana had jurisdiction over this matter before the District of Massachusetts because Cabot filed its Indiana Complaint on March 23, 2004, two weeks before Leight commenced this action. Ryan Decl., Exhs. 1 and 2. Accordingly, under the first to file rule, this action should be transferred to the Southern District of Indiana.

### 3. No documents are available in Massachusetts

As discussed above, all documents relating to the marketing, advertising and sale of Cabot's yellow colored earplugs are located at Cabot's Indianapolis headquarters. Myers Decl. ¶ 4. Virtually no such documents are located at the facility in Southbridge, Massachusetts. *Id.*, at ¶ 7.

Further, given that plaintiff's corporate headquarters is located in Rhode Island and the accused yellow colored earplugs are manufactured marketed and advertised in San Diego, California (Complaint, ¶ 1), and given that Leight has no facility or employees located in Massachusetts, it is apparent that Leight has no documents relating to this case located in Massachusetts. Accordingly, this factor clearly falls in favor of transfer to Indiana.

### 4. Consolidation in Indiana is certain

Leight's claims for relief will certainly be consolidated with the parallel case in Indiana if Cabot's motion to transfer is granted. Under Rule 13(a) of the Federal Rules of Civil Procedure, Leight's claims for relief are compulsory counterclaims to Cabot's Indiana Complaint. The Indiana Complaint alleges infringement of Cabot's federally registered trademark for yellow colored earplugs and related allegations for trademark dilution and false designation of origin based on Leight's manufacture of yellow colored earplugs in the United States for sale overseas. Ryan Decl., Exh. 1.

As discussed above, the validity of the '400 Registration is already at issue in the Indiana litigation because Cabot must prove validity in order to prevail on infringement. In its Complaint for declaratory judgment, Leight attacks the validity of the '400 Registration under functionality (Leight's First Claim For Relief) and abandonment (Leight's Second Claim For Relief). Leight further alleges that the court lacks subject matter jurisdiction for sales of earplugs

made abroad (Leight's Third Claim For Relief), and that Cabot is precluded by the principals of *res judica* to the extent it asserts the yellow earplug trademark against any <u>partially</u> yellow colored earplugs (Leight's Fourth Claim For Relief). Ryan Decl., Exh. 2.

Each of Leight's claims for relief arise out of the transaction or occurrence that is the subject matter of Cabot's Indiana Complaint – the '400 Registration- and therefore must be asserted as compulsory counterclaims to Cabot's Indiana Complaint. *See* Fed. R. Civ. P. 13(a). Accordingly, the present action will almost certainly be consolidated with the pending Indiana civil action if the motion for transfer is granted.

## III. CONCLUSION

For all of the above reasons, defendants Cabot Safety Intermediate Corporation and Aearo Company respectfully requests that its motion to transfer venue pursuant to 28 U.S.C. §1404(a) be GRANTED.

Respectfully submitted,

CABOT SAFETY INTERMEDIATE
CORPORATION and AEARO COMPANY

By: _____
Michael J. Rye, Esq. (BBO 556383)
Andrew C. Ryan, Esq. (BBO 636622)
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, CT
(860) 286-2929

Of counsel:

Robert B. Hebert
David C. Campbell
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900
(317) 968-5362

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404 was sent by first class mail, postage prepaid, on this 27th day of April, 2004, to the following:

Charles Hieken, Esq.
Gregory A. Madera, Esq.
225 Franklin Street
Boston, MA 02110-2804

_____
Andrew C. Ryan