# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CABOT SAFETY INTERMEDIATE CORP., et al., <br> Plaintiffs, <br><br> vs. <br><br> HOWARD LEIGHT & ASSOCIATES, INC., et al., <br> Defendants, | CIVIL ACTION <br> NO. 97-40216-NMG |

## REPORT AND RECOMMENDATION
### March 9, 2000

**SWARTWOOD, M.J.**

### Nature of the Proceeding

This matter was referred to me by Order of Reference dated May 27, 1999 for Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) on the following motions:

1.   Defendant Howard S. Leight and Associates, Inc.'s Motion for Summary Judgment (Docket No. 8); and

2.   Plaintiffs', Cabot Safety Intermediate Corp. And Aearo Co's Cross-Motion For Partial Summary Judgment (Docket No. 25).

## Nature of the Case

Plaintiffs, Cabot Safety Intermediate Corporation ("Cabot") and Aearo Company ("Aearo"), have filed a Second Amended Complaint ("Complaint") against Defendants, Howard S. Leight and Associates, Inc. ("Howard") and Bacou USA Safety, Inc. ("Bacou") alleging claims for: trademark infringement in violation of 15 U.S.C. §1051 *et seq.* (Count I); use of false designation in interstate commerce in violation of 15 U.S.C. 1051 *et seq.*(Count II); common law trademark infringement and unfair competition (Count III); violation of the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, §1, *et seq.* (Count IV); violation of the Federal Anti-Dilution Act, 15 U.S.C. § 1125, *et seq.* (Count V); violation of the California Anti-Dilution Act, Cal. Bus. & Prof. Code §14330 (West 1997)(Count VI); violation of Mass.Gen.L. ch. 110B, §12 (Count VII); violation of R.I. Gen. Laws §6-2-12 (Count VIII); and violation of Del. Code Ann. tit. 6, §3313 (Count IX).

Defendants seek summary judgment on all claims asserted by the Plaintiffs. Plaintiffs seek summary judgment only as to Count V of their Complaint.

## Standard of Review

To prevail on a Motion for Summary Judgment, the moving party must establish the non-existence of any genuine issue of fact

- 2 -

material to a judgment in its favor.  <u>Snow v. Harnishfeger Corp.</u>, 12 F.3d 1154, 1157 (1st Cir. 1993).  In determining the existence of any genuine issue of fact, the inferences to be drawn from the underlying facts contained in the pleadings or other documents submitted in favor or in opposition to such motion must be viewed in a light most favorable to the non-moving party.  <u>Id.</u>  Whether a fact is material is dependent on the governing substantive law.  "A material fact creates a genuine issue for trial `if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 955 (1st Cir. 1992) (citations omitted).

When considering cross-motions for summary judgment, a court must rule on each motion independently and decide in each instance whether the moving party has established, in accordance with Fed. R.Civ.P. 56, that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  <u>Federal Deposit Ind. Corp.</u>, 941 F. Supp. 256 (D.Mass. 1996)(citing <u>Dan Burclay, Inc. v. Stewart L. Stevenson Services</u>, 761 F. Supp. 194, 1977-98 (D.Mass. 1991)).

<u>Facts</u>

1.  Cabot is the owner of United States Trademark registration No. 1,435,400 ("Trademark" or "mark") for the use of

the registered trademark on personal hearing protective devices; the mark claimed is the color yellow. Complaint, ¶6.

2.    Cabot has licensed the Trademark to Aearo. Id.

3.    Foam earplugs as those sold by Aearo were invented by Ross Gardner Jr., who chose the color yellow for his earplugs because he liked it. Pls' Consol. Mem. In Opp. to Def's Mot. For Sum. J. And In Sup. Of Pls' Cross-Mot. For Parial Sum. J. (Docket No. 50) ("Pls' Cons. Mem."), Ex. 1 (Affidavit of Ross Gardner, Jr.) ("Gardner Aff."), at ¶2.

4.    Plaintiffs' trademark for the color yellow on earplugs is the only mark registered in the United States Patent and Trademark Office for any color on earplugs. Affidavit of Michael J. Rye (Docket No.28) ("Rye Aff."), at ¶13.

5.    Except for specialty markets, such as the food industry, which require that earplugs be sold in a specified color, Plaintiffs' earplugs are sold exclusively in yellow. Affidavit of Brian C. Myers (Docket No. 29) ("Myers Aff."), at ¶2.

6.    At the commencement of this lawsuit, one of the businesses engaged in by Howard, d/b/a Howard Leight industries, was the manufacture and sale of hearing protection equipment, including earplugs.    In February 1998, Howard sold its hearing

- 4 -

protection business and d/b/a to Bacou.    Affidavit of John
Dean(Docket No. 13) ("Dean Aff."), at ¶1.[1]

7.    Since 1973, Cabot's E·A·R division has been selling
earplugs in a variety of shapes and shades of yellow. Gardner Aff.,
at ¶5; Rye Aff., at Ex. A.

8.    Howard Leight has, for many years, been aware for many
years that Cabot/Aero sold foam earplugs colored solid yellow under
the brand name E·A·R.    Dean Aff., at ¶3.

9.    In mid-1994, Howard Leight introduced its "Laser Lite"
earplug into the hearing protection market. Dean Aff., at ¶5. The
Laser Lite earplug is yellow and purple-pink, with yellow being the
predominant color. See Defs' Ex. C[2].

10.    The packaging for the Laser Lite earplugs clearly
identify them as Howard Leight products. Dean Aff., Ex. G.

11.    In mid-1997, Howard Leight introduced its "Multi Max"
earplug into the hearing protection market. Id., ¶6.    Multi Max

----

[1]For ease of reference, for the remainder of this Report and Recommendation
I will refer to the Defendants collectively as "Howard Leight".

[2]Plaintiffs argue that there is an issue of fact as to when the Laser Lite
was introduced since the Defendants have failed to produce documents reflecting
the actual date of first sale of this product. For purposes of this Report and
Recommendation, I will accept Defendants' statement that the Laser Lite was
introduced in mid-1994.

earplugs are shaped differently from Cabot's E·A·R plugs and are half red-orange and half yellow. See Defs' Ex. B.

12. The packaging for Multi Max earplugs clearly identify them as Howard Leight products. Dean Aff., at Ex. G.

13. Howard Leight chose yellow as one of the colors for its two-color earplugs because it is highly visible and aesthetically compatible with most other colors. Id., at ¶¶12, 14.

14. Bright colors, such as yellow, assist employers in monitoring their employees' compliance with OSHA hearing protection requirements. Id., at ¶11; Consolidated Reply and Opp. Mem. of Def.(Docket No. 49)("Cons. Reply and Opp."), at Exs. 5a, 5c, 5d, and 5e.

15. The yellow on Howard Leight's earplugs is a different shade than that of the Cabot earplugs. See Dean Aff., at Ex. I. Cabot's mark covers the color "yellow" and not a particular shade of yellow. Id., at Ex. H.

16. At the time of his deposition, Brian Myers, Product Line Director of E·A·R Products, testified that he was not aware of any actual confusion between the Plaintiffs' products and the Defendants' products. Def's Statement of Material Facts As To Which There Is No Genuine Dispute (Docket No. 10), Ex. 2(Deposition of Brian Myers), at pp. 46-47.

17.  Sales of earplugs for industrial applications constitute at least 95% of the parties' sales.[3]

18.  Most employers purchase earplugs such as those sold by the parties through distributors.  They make their purchases by viewing manuals which advertise various earplugs, including the parties' earplugs.  The advertisements often picture the earplugs without any packaging.

19.  In 1993, Howard Leight filed a United States trademark application for the color "coral" on earplugs.  As part of the application, Howard Leight signed an affidavit in which it was acknowledged that earplug manufacturers use colors to distinguish themselves.  Attached to the affidavit was an advertisement of Aero's which reflected Aero's trademark registration for yellow earplugs.  Rye Aff., at Ex. C.  Howard Leight's application was denied.  Id.

## Discussion

### Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Trademark Infringement Claim

Section 43(a) of the Lanham Act forbids persons from using "in connection with any goods ... or any container for goods, ... any

---

[3]Plaintiffs' cite Meyer's Aff., at ¶5 for this proposition.  The cited reference does not support this fact.  Nevertheless, for purposes of this Report and Recommendation, I will accept this fact as true.

word, term, name, symbol, or device, or any combination thereof ...
which ... is likely to cause confusion, or to cause mistake, or to
deceive ... as to origin, sponsorship, or approval of his or her
goods ... by another person." 15 U.S.C. § 1125(a). "The purpose of
trademark law is to prevent the use of the same or similar marks in
a way that confuses the public about the actual source of the goods
or service. Confusion about source exists when a buyer is likely
to purchase one product in the belief she was buying another and is
thus potentially prevented from obtaining the product she actually
wants.". Star Financial Serv., Inc. v. Aastar Mortg., 89 F.3d 5, 9
(1st Cir. 1996)(internal citation omitted). In order to prevail on
a claim for trademark infringement, "the plaintiff must establish:

> `1)that he uses, and thereby `owns,' a mark, 2) that the
> defendant is using the same or a similar mark, and 3)
> that the defendant's use is likely to confuse the public,
> thereby harming the plaintiff.'

Id.(quoting DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st
Cir. 1992)). Furthermore, "[t]he harm caused by the confusion may
be attributable [to] the defendant's appropriation of the
plaintiff's goodwill (perhaps leading to sales diversion), or the
reduction in the value of the mark by virtue of the association of
the plaintiff with the defendant's own `bad' name (so-called
`reverse confusion'). Id., at 9-10. There is no question that

- 8 -

Plaintiffs own and use the mark at issue and therefore, that they have established the first two elements of their claim. Defendants assert that they are entitled to summary judgment because the Plaintiffs have failed to establish the third element of their claim, that there is a "likelihood of confusion". The First Circuit, which requires "`substantial' likelihood of confusion- not a mere possibility", applies the following eight non-exclusive factors for purposes of determining whether there is a likelihood of confusion:

> `(1) the similarity of the marks; (2) the similarity of the goods ...; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; [and] (8) the strength of the plaintiff's mark.'

Id., at 10 (citation to quoted case omitted). All of the factors must be considered and none of the factors is to be given any greater weight than any other factor. Id.

<u>Similarity of Mark</u>

Both parties' earplugs use the color yellow. However, the Plaintiffs use only the color yellow and the Defendants use two colors: yellow and either purple-pink or red-orange. Furthermore, the yellow used by the Defendants in its earplugs is a lighter shade of yellow than that used by the Plaintiffs. The Plaintiffs

argue while in a person's ear, it is possible that only the yellow portion of the Defendants' earplugs may be visible[4] and therefore, a person observing the Defendants' earplugs in another's ear could assume that the earplug was one of Plaintiffs' earplugs.  However, "similarity, `is determined on the basis of the total effect of the designation, rather than a comparison of individual features.'" I.P Lund Trading ApS, Kroin Inc. v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998)(internal citation and citation to quoted case omitted). For the reasons set forth below, I find that the "total effect" of Howard Leight's two-tone earplugs lessens any chance that such earplugs will be confused with Plaintiffs' earplugs.

In addition to being solid yellow, the Plaintiffs' earplugs have a distinctive shape.  The Plaintiffs' earplugs come in clear plastic packages or boxes which are clearly marked with the E·A·R logo.  The predominant colors which appear on the packaging are blue and white; some packages also have some yellow and red. Pls' Ex. 1.  Defendants' two-toned earplugs are also of a distinctive shape.  For the most part, the shape of the Plaintiffs' earplugs is very different from that of the Defendants' earplugs (the shape of

---

[4]With respect to the Laser Lite, a person looking directly at the earplug in another's ear would see yellow.  With respect to the Multi Max, depending on which end was put into a person's ear, the only color which could be seen would be either yellow or red-orange.

the Defendants' Laser Lite earplug is somewhat similar to that of the Plaintiffs' E·Z· Fit earplugs.) <u>See</u> <u>Defs Ex. C</u> and E·Z· Fit earplugs pictured in <u>Cons. Reply and Opp.</u>, at <u>Ex. 5a</u>. That portion of the Defendants' earplugs which is yellow, is a lighter shade of yellow than that used in Plaintiffs' earplugs. The Plaintiffs' earplugs come in clear plastic packages or boxes which are clearly marked with the "Howard Leight" name. The predominant color on the plastic packaging used by the Defendants is green for the "Multi Max" and purple-pink for the "Laser Lite". <u>Defs. Exs. B, C</u>. The Defendants use multiple colors on their box packaging, including blue, white, red and yellow. <u>Dean Aff.</u>, at <u>Ex. G</u>.

Under these circumstances, there is no likelihood of confusion. This factor favors the Defendants.

<u>Similarity of Goods</u>

Both parties manufacture and sell foam earplugs. While they are distinct in color and shape, the functional characteristics of the parties' products are essentially the same. Advertisements submitted by the Defendants suggest that their earplugs are much cheaper than the Plaintiffs. However, I cannot find this to be a fact based on that evidence. Based on the record before me, I find that the parties' products are similar. Therefore, this factor favors the Plaintiffs.

- 11 -

Relationship Between Parties' Advertising; Parties' Channels of
Trade, and Classes of Prospective Purchasers.[5]

The parties submissions make clear that they both advertise in
similar publications; their advertisements differ as to content but
many appear similar in style, and they target the same channels of
trade (industrial users of earplugs).  These two factors favor the
Plaintiffs.  The prospective purchasers targeted by the parties are
industrial users of earplugs.  Such purchasers are sophisticated
and therefore, unlikely to be confused between the two parties'
products.  This factor favors the Defendant's.

## Evidence of Actual Confusion

The Plaintiffs have not offered any evidence that the
Defendants' earplugs have been confused with its earplugs.  In
fact, Mr. Myer, Aearo's Product Line Director, testified that he
was not aware of any actual confusion between the parties'
products.  This factor favors the Defendants.

## Defendants' Intent

Defendants were aware that Cabot manufactured earplugs in the
color yellow.  Howard Leight was not aware that Cabot had a
registered trademark for the color yellow on hearing protection

---

[5]The First Circuit has approved the practice of analyzing these three
factors together. See Star Finincial Serv., 89 F.3d at 10 n.3.

devices.  Howard Leight used a different shade of yellow than that
used by the Plaintiffs and it chose the color yellow because it
complimented the second shade (purple-pink and red-orange) used in
its earplugs.   Additionally, yellow is a color that would
compliment many other colors if Howard Leight chose to expand its
line of two-tone earplugs.   Plaintiffs' conclusory allegations
aside, I do not find that the Defendants intended to deceive or
benefit from Plaintiffs' reputation in the industry by using the
color yellow.  See Pignon S. De Mecanique de Precision v. Polaroid
Corp., 657 F.2d 482, 491 (1st Cir. 1981).  This factor favors the
Defendants.

Strength of Mark

"In assessing a mark's strength, the trier of fact considers
evidence of the length of time the mark has been used, its renown
in the Plaintiffs' field of business, and the plaintiffs' actions
to promote the mark".  Star Financial Serv., 89 F.3d at 11. Cabot
began manufacturing and selling yellow earplugs in 1973.  Since
that time, except when otherwise required by a given industry, the
Plaintiffs have exclusively manufactured and sold yellow earplugs.
The Plaintiffs' advertisements trumpet the fact that its earplugs
are yellow.  At least one advertisement states "If its yellow, it's
E·A·R".  Cons. Reply and Opp., at Ex. 5e.  Plaintiffs have also

purposes of this Report and Recommendation, I will assume that Plaintiffs' mark, the color yellow on hearing protection devices, is a strong one and thus, entitled to broader protection under the trademark laws. Id., at 492.

I have found that four factors favor Plaintiffs and four favor the Defendants. However, the factors most relevant to a likelihood of confusion, i.e., similarity of mark, sophistication of purchasers and whether there is evidence that there has been actual confusion, strongly favor the Defendants and are dispositive of this claim.

I find that the Plaintiffs have failed to establish that there is a genuine issue of material fact as to an essential element of their claim, i.e., whether there is a likelihood of confusion and therefore, the Defendants are entitled to summary judgment on Plaintiffs' infringement claim as a matter of law.

**Defendants' Motion for Summary Judgment On Plaintiffs' False Designation Claim**

In order to establish an infringement claim for false designation, a plaintiff must prove:

> (1) [d]efendants used a designation (any word, term, name, device, or any combination thereof); (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake[,] or deception as to (a) affiliation, connection, or

association of defendant with another person, or (b) as
to the origin, sponsorship, or approval of defendant's
goods, services, or commercial activities by another
person; and (5) plaintiff has been or is likely to be
damaged by these acts.

Brown v. Armstrong, 957 F.Supp. 1293, 1300 (D.Mass. 1997).

Defendants argue that this cause of action, like Plaintiffs'
infringement claim, turns on whether there is a likelihood of
confusion and therefore, if they are entitled to summary judgment
on Plaintiffs' infringement claim, they are entitled to summary
judgment on this claim. Plaintiffs do not argue to the contrary.

Since Plaintiffs have not provided any argument concerning
this claim, I must infer the basis for such claim from the
Complaint. Plaintiffs appear to be asserting that because the
color yellow is so closely associated with its products, because it
has extensively advertised its products and because the parties
target the same purchasers by the same means, the Defendants use of
the color yellow will cause confusion among potential purchasers as
to the origin of Defendants' earplugs, i.e., purchasers will think
that Defendants' earplugs are manufactured by the Plaintiffs.

First, Plaintiffs have failed to establish that any such
confusion exists. Second, as I have previously stated, the color
and shape of Defendants' products are sufficiently different from
the Plaintiffs that there is no likelihood of confusion.

- 15 -

Additionally, Defendants earplugs are packaged in either plastic bags or boxes which clearly identify them as Howard Leight products and such packaging is sufficiently different from Plaintiffs that there can be no confusion concerning the origin of the products. Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554, 561 (1st Cir. 1982)(showing that marks or packaging of defendant creates likelihood of confusion is key to false designation claim).

Plaintiffs have failed to establish that there is a genuine issue of fact concerning an essential element of their claim and therefore, Defendants are entitled to summary judgment as a matter of law.

Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment On Plaintiffs' Federal Dilution Act Claim

Plaintiffs have asserted a claim under the Federal Dilution Act, 15 U.S.C. §1125(c)("FTDA"), which provides in relevant part, that "[t]he owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark ... if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark ...".  "The overriding purpose of anti-dilution statutes is to prohibit a merchant of non-competitive goods from selling its products by trading on the goodwill or reputation of another's mark."  The

Nexxus Products Co. v. CVS New York, Inc., 188 F.R.D. 11, 16
(D.Mass. 1999). While it is true that in enacting the FTDA,
Congress was focusing on the protection of marks in situations
involving non-competing products, the act applies equally to
competitors.

In order to establish a claim under the FTDA, the plaintiff
must establish that its mark is "distinctive and famous". In making
this determination, this Court may consider the following factors:

(A) the degree of inherent or acquired
distinctiveness of the mark;

(B) the duration and extent of use of the mark in
connection with the goods or services with which the mark
is used;

(C) the duration and extent of advertising and
publicity of the mark;

(D) the geographical extent of the trading area in
which the mark is used;

(E) the channels of trade for the goods or services
with which the mark is used;

(F) the degree of recognition of the mark in the
trading areas and channels of trade used by the marks'
owner and the person against whom the injunction is
sought;

(G) the nature and extent of use of the same or
similar marks by third parties; and

(H) whether the mark was registered under the Act of
March 3, 1881, or the Act of February 20, 1905, or on the
principal register.

- 17 -

15 U.S.C. §1125(c)(1).   The First Circuit has cautioned "that courts should be discriminating and selective in categorizing a mark as famous".  I.P. Lund, 163 F.3d at 46.   Thus, the First Circuit applies a heightened standard for determining whether a mark is famous and:

> `[a] mark that evokes an association with a specific source only when used in connection with the particular goods or services it identifies is ordinarily *not* sufficiently distinctive to be protected against dilution.'

Id., at 46-47 (quoting Restatement (Third) of Unfair Competition cmt.e (1995))(emphasis added).  This standard "is more rigorous than that required to seek infringement protection". Id., at 47.   Therefore, it is irrelevant to this analysis that in my discussion of Plaintiffs' infringement claim, I found Plaintiffs' mark to be a strong one.

It is clear that the mark in question evokes an association with the Plaintiffs only when used on earplugs and therefore, Plaintiffs must overcome a substantial hurdle if they are to establish that their mark is famous and distinctive. Nevertheless, I find based on the record before me, I do not have sufficient facts to make a finding with respect to factors (C), (D), (F) or

- 18 -

(G).[6]  For this reason, I cannot, at this time, find as a matter of law that Plaintiffs' mark is or is not "famous and distinctive". However, even if Plaintiffs establish that their mark is famous and distinctive, they must also establish that it has been diluted. This they have failed to do.[7]

"[T]here are two types of dilution recognized: blurring and tarnishing".  Id.  In this case, Plaintiffs argue that Defendants' use of the color yellow on their earplugs dilutes their mark on blurring grounds.  I agree with the sentiments on "blurring" recently voiced by Judge Woodlock in Hasbro:

> `Not every use of a similar mark will blur a famous mark
> .... [T]he human mind has the capacity to recognize the
> distinctiveness of a multiplicity of concepts, ideas and
> images without confusion of association.' The basic idea
> of blurring is that the defendant's use of the
> plaintiff's product causes the public no longer to think
> only of the plaintiff's product upon seeing the famous
> mark, but rather to associate both the plaintiff and the
> defendant with the mark.  `Blurring is one mark seen by
> customers as now identifying two sources'.  Thus, while
> actual confusion about the source of the plaintiff's and

---

[6]In their memorandum in support of their motion for partial summary judgment, Plaintiffs have asserted facts which they argue resolve a number of these factors in their favor.  However, facts asserted in an unsworn memorandum do not create a genuine issue of material fact, nor can they be relied on to establish that a party is entitled to summary judgment as a matter of law.

[7]In order to establish a claim under the FTDA, as is the case with an infringement claim, a plaintiff must also establish "that the defendant is making commercial use of the mark in commerce ... [and] that the defendant adopted its mark after the plaintiff's mark became famous".  See Hasbro, Inc. v. Clue Computing, Inc., 66 F.Supp.2d 117, 130 (D.Mass. 1999).  I find that these two elements of Plaintiffs' dilution claim have been met.

defendant's products is not required for blurring, something akin to confusion-- the mistaken association of both products with the mark-- is required.

Hasbro, 66 F.Supp.2d at 134 (alterations in original)(internal citations and citations to quoted case and treatise omitted).

In order to determine whether there has been a dilution of a plaintiff's mark, courts have traditionally applied the so-called "Sweet factors", which are: "similarity of the marks (2) similarity of the products covered by the marks (3) sophistication of consumers (4) predatory intent () renown of the senior mark [and] renown of the junior mark". Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1035 (2d Cir. 1989)(Sweet, J., concurring).    However, in I.P. Lund, the First Circuit rejected the application of the second, third, fourth and sixth Sweet factors to a "blurring" case involving competitive products.    Thus, the only Sweet factors to which this Court must look are the similarity of the parties' marks and the "renown" of the Plaintiffs' mark (the senior mark). See Hasbro, 66 F.Supp.2d at 134.    Additionally, the First Circuit held that in analyzing whether there has been dilution, a court must inquire "into whether target customers are likely to view the products `as essentially the same'". I.P. Lund, 163 F.3d at 50(quotation to cited source omitted); see also Hasbro, 66 F.Supp.2d at 135-36.

- 20 -

<u>Similarity of Marks</u>

I have previously found that the parties' marks are dissimilar. I reiterate that finding here. Plaintiffs' mark is the use of the solid color yellow on distinctively shaped, foam earplugs. Defendants' "mark" is the use of two-colors on distinctively shaped foam earplugs, one color of which is yellow; the yellow used on Defendants' earplugs is lighter in color than that used on Plaintiffs' earplugs and for the most part, the shape of Defendants' earplugs is substantially different than that of the Plaintiffs. This factor favors a finding of no dilution.

<u>Renown of Plaintiffs' Mark</u>

In this case, Plaintiffs have not proffered any evidence that its mark has gained widespread national recognition. However, I have previously made that assumption and I will make that same assumption here. This factor favors a finding of dilution.

<u>"Customer Confusion"</u>

Judge Woodlock has opined that a third factor requires this Court to consider "`whether target customers are likely to view the products as "essentially the same"'" and whether the mark in question be "`seen by customers as now identifying two sources'". <u>Hasbro</u>, 66 F.Supp.2d at 135-36 (quoting <u>I.P. Lund</u>, 163 F.3d at 50 and 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

- 21 -

Competition § 24:90.1 (4th ed. 1996))(internal citation omitted).
"These guidelines seem to require that consumers at least
potentially associate two products with the same mark ... even if
they are not confused as to the different origins of the products".
Id., at 136.    I find that Plaintiffs have failed to establish that
consumers: "will improperly view" the parties' products as the
same; "will see one mark as identifying two sources"; or "will
associate both products with [Cabot's] mark". See Hasbro, 66
F.Supp. 2d at 136.    Therefore, this factor, which for lack of a
better term, I will refer to as the "customer confusion" factor
(which is not to be confused with the trademark infringement "lack
of confusion" analysis), favors the Defendants.

The First Circuit, in a case involving alleged dilution of a
product design, observed that it "is ... difficult ... to see how
dilution is to be shown where some of a design is partially
replicated and the result is largely dissimilar and does not create
consumer confusion". I.P. Lund, 163 F.3d at 50.    For the reasons
stated above, I find that Plaintiffs have failed to meet their
burden on this claim, and therefore, Defendants are entitled to
summary judgment as a matter of law.

<u>Plaintiffs' Pendant State Law Claims</u>

For the reasons stated above, I am recommending that Defendants' summary judgment motion be allowed as to Plaintiffs' federal trademark claims (Counts I, II and V). If such claims are dismissed, this Court does not have jurisdiction over Plaintiffs' pendant state law infringement, unfair competition and dilution claims and under the circumstances, this Court should decline to exercise jurisdiction. Therefore, those claims should be dismissed without prejudice.

<u>Conclusion</u>

I recommend:

1. Defendant Howard S. Leight and Associates, Inc.'s Motion for Summary Judgment (Docket No. 8) be <u>allowed</u> as to Counts I, II and V;

2. Plaintiffs', Cabot Safety Intermediate Corp. And Aearo Co's Cross-Motion For Partial Summary Judgment (Docket No. 25) be <u>denied</u>; and

3. Plaintiffs' remaining claims be dismissed without prejudice.

<u>Notice to the Parties</u>

The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States

- 23 -

District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objection.  The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation.  See United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982);  Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).  See also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).

CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE